## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**BRENDA S. DILLON,**

      **Plaintiff,**

      **v.**

**DAREN HAMLIN,** *et al.,*

      **Defendants.**

**Case No. 1:23-cv-103**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

This case arises from a school sporting event gone awry. Lawrence County Sheriff's Deputy Daren Hamlin arrested Brenda Dillon for disorderly conduct at a high school girls' basketball game in Proctorville, Ohio. She responded by suing Hamlin and Lawrence County Sheriff Jeff Lawless. (Compl., Doc. 1). More specifically, she brought a six-count Verified Complaint, asserting five separate § 1983 claims, citing the First and Fourth Amendments,[1] and one claim under Ohio Constitution Article I, § 11 (Ohio's freedom of speech provision). (Doc. 1, #5–10). She asserts three of the § 1983 claims and the Ohio constitutional claim against both

---

[1] Technically, because these are state actors, the First and Fourth Amendment claims are really Fourteenth Amendment claims, in that the Fourteenth Amendment incorporates the First and Fourth Amendments and applies them against the States. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925) ("For present purposes we may and do assume that freedom of speech and of the press—which are protected by the First Amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States."); *Mapp v. Ohio*, 367 U.S. 643, 650–51 (1961) (recognizing that the Fourth Amendment's protection against unreasonable searches and seizures was incorporated against the states in *Wolf v. Colorado*, 338 U.S. 25 (1949)). For clarity, though, the Court will refer to the First and Fourth Amendment arguments in those terms.

Defendants, and one of the two remaining § 1983 claims against each Defendant. She also avers that any § 1983 claim that names any Defendant names that Defendant in both his individual and official capacities. (*Id.* at #3).

The matter is now before the Court on Defendants' motion seeking partial dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 6). Defendants argue that the Court should dismiss: (1) all five official-capacity § 1983 claims against either Defendant for failure to identify a custom or policy; (2) all § 1983 claims against Lawless in his individual capacity for failure to allege any involvement in the events; (3) the Ohio claim, because Ohio's Constitution does not create a private right of action; and (4) one § 1983 claim (a Fourth-Amendment-based malicious prosecution claim) in its entirety, for failure to allege any deprivation of liberty beyond the initial arrest, which is a necessary element of such a claim. (*Id.* at #29–44). Plaintiff has responded, (Doc. 8), and Defendants have replied, (Doc. 9).

For the reasons below, the Court **GRANTS** Defendants' Partial Motion to Dismiss. Accordingly, it **DISMISSES** the § 1983 claims against Hamlin and Lawless in their official capacities, the § 1983 claims against Lawless in his individual capacity, and the § 1983 malicious prosecution claim in its entirety, but does so **WITHOUT PREJUDICE**. Separately, it **DISMISSES** the Ohio constitutional claim **WITH PREJUDICE**. As things stand, that removes Lawless as a defendant, but leaves the remaining three § 1983 claims against Hamlin in his individual capacity to proceed.

## BACKGROUND

The facts here, as stated in the Complaint and Hamlin's narrative statement, are straightforward.[2] On February 24, 2021, Dillon was attending a high school girls' basketball game at which Hamlin was providing security. (Doc. 1, #3). An unnamed male approached Hamlin and asked him to make Dillon go back to the other side of the gym because she was "cussing and causing a disturbance." (*Id.* at #13). Hamlin approached Dillon, who denied any such behavior. (*Id.*). As the situation escalated, Dillon threatened to call Lawless and refused to leave the building. (*Id.*). When Dillon ultimately tried to return to the other side of the gym, Hamlin told her she was under arrest and Dillon "pulled away and told [him] she wasn't going anywhere." (*Id.*). In response Hamlin "t[ook] [her] to the ground and handcuffed [her]." (*Id.*). More specifically, Plaintiff alleges that "Hamlin told Ms. Dillon to 'Shut up, butch,'"[3] before "unnecessarily tackl[ing] her to the ground via a dangerous leg sweep." (*Id.* at #4).

Based on these factual allegations, Dillon filed a six-count Verified Complaint suing Hamlin and Lawless in both their individual and official capacities. (Doc. 1, #3).

---

[2] This matter is before the Court on a Rule 12(b)(6) motion to dismiss. For purposes of a motion to dismiss, the Court accepts Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Accordingly, the Court relies on Dillon's allegations in describing the background, but with the caveat that they are only allegations. The Court also relies on Hamlin's narrative statement of the incident. That document is attached to the Complaint as Exhibit A, (Doc. 1, #13). *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("[T]he court may, in undertaking a 12(b)(6) analysis, take judicial notice of … exhibits attached to the complaint.") (quotation omitted). And Defendants rely on it when recounting the facts of the case in their Partial Motion to Dismiss, (Doc. 6, #26–27), so they do not seem to be disputing its authenticity. Hamlin's narrative statement is also consistent with the other factual allegations in the Complaint.

[3] "Butch" is not a typo. Dillon says Hamlin used the term "butch" as a derogatory reference to her sexual orientation. (Doc. 1, #4).

Those six counts are: one count against both Defendants alleging First Amendment violations, via the Civil Rights Act of 1871, 42 U.S.C. § 1983 (Count I); one count against both Defendants, alleging unlawful restraint of speech in violation of Ohio Constitution Article I, § 11 (Count II); one § 1983 count against Hamlin for excessive force in violation of the Fourth and Fourteenth Amendments (Count III); one § 1983 count against both Defendants for unlawful arrest and seizure, in violation of the Fourth and Fourteenth Amendments (Count IV); one § 1983 count against Lawless for negligent hiring, training, and supervision in connection with Hamlin's alleged Fourth Amendment violations (Count V); and one § 1983 count against all Defendants for malicious prosecution (Count VI).[4] (Doc. 1, #5–10). For relief, she seeks compensatory and punitive damages, as well as costs and attorneys' fees. (*Id.* at #10).

Defendants moved to partially dismiss the Complaint. (Doc. 6). First, they argue that the Court should dismiss all five § 1983 claims against either Lawless or Hamlin in their official capacities because Counts I, III, IV, V, and VI do not plausibly allege that Defendants acted pursuant to an official policy or custom, a requirement that *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978), imposes. (*Id.* at #29–37).

---

[4] The Complaint labels the counts as I, II, III, IV, V, and VIII. (Doc. 1, #5–10). To avoid confusion about missing counts, though, the Court will refer to the final count as Count VI, not Count VIII. Separately, although the Complaint does not state the constitutional basis for the § 1983 malicious prosecution claim, the Sixth Circuit has held that such claims arise under the Fourth Amendment. *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006) ("We recognize a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment.") (citation and quotation omitted).

Second, they argue that the four § 1983 claims against Lawless in his individual capacity fail because Plaintiff does not allege Lawless played any direct role in the events at issue, and Plaintiff insufficiently alleges a theory of supervisory liability, or, in the alternative, that Lawless is entitled to qualified immunity. (*Id.* at #37–42). Third, they argue that the § 1983 malicious prosecution claim fails to state a claim because Plaintiff never alleges that she suffered a deprivation of liberty apart from the initial seizure—a necessary element of such claims. (*Id.* at #42–43). Last, they argue that the Ohio law claim fails because the Ohio Constitution does not provide a private right of action. (*Id.* at #43–44).

Plaintiff responded, but only to some of the arguments. Specifically, she argues that (1) she pleaded sufficient allegations for her official-capacity § 1983 claims, and her supervisory liability claim against Lawless, to survive a motion to dismiss under an "inaction theory," and (2) she allegedly participated in a pretrial release program, which constitutes a deprivation of liberty apart from the initial seizure and therefore suffices to allege her § 1983 malicious prosecution claim. (Doc. 8, #57–60).

Defendants replied. (Doc. 9). They begin by arguing that, because Dillon did not respond to their arguments about the individual-capacity claims against Lawless and the Ohio claim, she conceded that the Court should dismiss those claims. (*Id.* at #62–63). They then argue that Plaintiff's allegations are insufficient for her official-capacity § 1983 claims to survive a motion to dismiss under any theory, including an inaction theory. (*Id.* at #63–66). Finally, they contend that the Court cannot credit

any additional facts Dillon alleges in her opposition brief in support of her malicious prosecution claim, and that the allegations from her Complaint fall short. (*Id.* at #66).

The matter is now before the Court on the Partial Motion to Dismiss.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). The complaint must allege sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable." *Id.* In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege as gospel, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings … However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.") (cleaned up).

## LAW AND ANALYSIS

Although the Motion to Dismiss is "partial," it nonetheless attacks all or parts of each of the claims in the Complaint. The Court begins it analysis with the Ohio Constitution claim, then turns to the challenge to the official-capacity aspects of the § 1983 claims. It next addresses the challenge to the claims against Lawless in his individual capacity, before discussing the § 1983 malicious prosecution claim, which Defendants seek to dismiss in its entirety.

## A.     The Claim Under The Ohio Constitution

Start with an easy one. In Count II, Dillon asserts a direct claim for money damages against state actors under the Ohio Constitution. Defendants argue that the Court should dismiss the claim because there is no private right of action for violations of the Ohio Constitution. (Doc. 6, #43–44). The Court agrees.

"[T]he Ohio Constitution itself does not provide for a civil damage remedy." *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992). *Accord Harris v. Columbus*, 2016-Ohio-1036, ¶ 24 (10th Dist.) ("Insofar as Harris alleges a violation of the Ohio Constitution, there is no private right of action for damages based on a violation of the Ohio Constitution."). "Moreover, unlike the federal system where 42 U.S.C. § 1983 creates a private cause of action to remedy violations of the United States Constitution, there exists no statute in Ohio analogous to Section 1983." *Autumn Care Ctr., Inc. v. Todd*, 22 N.E.3d 1105, 1110 (Ohio Ct. App. 2014) (citation omitted). In short, Dillon cannot pursue money damages—which is the only relief she seeks—against Defendants predicated on alleged violations of Article I, § 11 of the Ohio Constitution. So the Court dismisses Count II. And because Dillon cannot address this legal shortcoming through additional factual allegations, the dismissal is with prejudice. *See Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment.") (quotation omitted).

**B.      The Official-Capacity § 1983 Claims**

Next, the Court turns to the five § 1983 claims asserted against Lawless, Hamlin, or both, in their official capacities: Counts I and III–VI. In their Partial Motion to Dismiss, Defendants argue that these claims should be dismissed because the official-capacity claims are really claims against a governmental entity and Plaintiff fails to plausibly allege the existence of an illegal policy or custom—a necessary element of a § 1983 claim against a municipality. (Doc. 6, #29–37). Plaintiff responds that her § 1983 claims are plausible and "are set forth under, *inter alia*, an 'inaction theory.'" (Doc. 8, #58–59). Defendants disagree, contending that she does not provide enough factual allegations to show an illegal policy or custom under any theory, including an inaction theory. (Doc. 9, #64 ("Although Defendants do not believe the Complaint sets forth sufficient allegations to establish any element required under the 'inaction theory,' Defendants maintain that the Complaint is completely devoid of any allegation necessary to establish the first and second elements.")). Once again, as more fully discussed below, the Court agrees with Defendants.

**1.      The Legal Standard**

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*,

9

491 U.S. 58, 68 (1989)). Any claim against either Hamlin or Lawless in their official capacities, then, is the equivalent of suing Lawrence County—their employer—as a governmental entity.

A viable § 1983 claim against a governmental entity must allege (1) a constitutional violation, which (2) was directly caused by a municipal policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may prove that a defendant has an actionable, unconstitutional "policy" or "custom" in place by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas*, 398 F.3d at 429). Dillon has not plausibly alleged an actionable policy or custom under any of the avenues *Thomas* described.

### 2. The Municipal Liability Claim

#### a. Official Custom Or Policy

Start with whether she has alleged that an illegal, official policy exists. To survive a motion to dismiss based on that theory, Dillon needs to "allege facts that point towards a policy or custom that forms the basis of [her] claim." *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802682, at *7 (N.D. Ohio July 13, 2010);

*see also Austin v. City of Cincinnati*, No. 1:15-cv-608, 2016 WL 1718264, at *2 (S.D. Ohio Apr. 28, 2016) ("[T]he Complaint itself is devoid of any factual enhancement that would allow the Court to reasonable [sic] infer the existence of an alleged policy that caused any particular constitutional violation.") But the Complaint cites no specific, official policy of the Lawrence County Sheriff's Department that Dillon says led to her injuries. It only offers vague and conclusory allusions to "customs" and "policies." (*E.g.* Doc. 1, #9 ("As a direct and proximate result of the customs, policies, and practices described herein and permitted by Defendant Lawless, which violate the Fourth Amendment on their face, or otherwise are applied in a manner such that Fourth Amendment violations are likely to occur …")). And the Court may disregard "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. So the Court determines that Dillon's official-capacity § 1983 claims cannot survive the Partial Motion to Dismiss based on plausibly alleging the existence of an official policy.

### b.    Ratification

The Complaint also fall short on a ratification theory because Dillon does not allege facts suggesting that Lawless—or another official with final decision-making authority—ratified Hamlin's conduct. The closest she comes is Count V, in which she says that "Defendant Lawless ratified Defendant Hamlin and the conduct described herein by allowing him to seize Ms. Dillon on conduct constituting a minor misdemeanor offense." (Doc. 1, #9). But she alleges no facts in support of that. For example, she does not allege that Hamlin called Lawless while arresting her, that

11

Lawless was present during her arrest, or that Lawless had any other direct role in her arrest. Nor does she explain how Lawless ratified Hamlin's conduct in some other way. So, once again, the Court treats the allegation of "ratification" as conclusory and disregards it. *Iqbal*, 556 U.S. at 678. That means the official-capacity § 1983 claims cannot survive the Partial Motion to Dismiss based on a ratification theory.

### c. Inadequate Training Or Supervision

That brings the Court to the third issue: "the existence of a policy of inadequate training or supervision." *Burgess*, 735 F.3d at 478. "A failure-to-train claim … requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* (cleaned up). Here, as Defendants correctly argue, Dillon has not plausibly alleged a history of prior instances of illegal activity, such that the County knew or should have known that its training was deficient. So her claim fails.

Dillon cites four cases to argue that she has plausibly alleged a history of unconstitutional conduct: *Templeton v. Brandt*, No. 1:20-cv-34, 2021 WL 1312617 (S.D. Ohio Apr. 7, 2021); *Freeman v. Spoljaric*, 667 F. Supp. 3d 636 (S.D. Ohio 2023); *Assi v. Hanshaw*, 625 F. Supp. 3d 722 (S.D. Ohio 2022); and *Stager v. Hanshaw* (Case No. 1:23-cv-120). (Doc. 8, #59). None help her. First, merely pointing to other cases without discussing the details of each case (including how each case was resolved) is unpersuasive—those details matter. *Cf. Stanfield v. City of Lima*, 727 F. App'x 841, 852 (6th Cir. 2018) ("The mere existence of complaints, without more, is not sufficient

evidence to allow a reasonable jury to find the existence of a clear and persistent pattern of illegal activity."). Second, *Stager* is before this Court on a pending motion to dismiss. Given that the Court has not yet ruled on that motion, Dillon cannot reasonably claim that there have been findings of unconstitutional conduct (or anything else) in that case. That means it does not help her plausibly allege a history of illegal conduct that would put Defendants on notice of training deficiencies.

Third, *Assi* is similarly unhelpful. That case—which involved claims by an incarcerated plaintiff with a disability based on the defendants strapping him into a restraint chair—is factually unlike this case. *Assi*, 625 F. Supp. 3d at 730–732. Given the substantial factual differences, the Court struggles to see how *Assi* would help show a history of rights violations *of the type alleged here* that would put Defendants on notice that their training was inadequate as to *the type of conduct alleged here*. Additionally, in ruling on the motion to dismiss in that case, the Court found that Assi failed to plausibly allege a *Monell* claim by relying on his vague allegations about previous lawsuits. *Id.* at 751 ("Assi's allegations that there had been previous lawsuits regarding unconstitutional conduct at the LCJ are vague—failing to provide specifics as to the nature of the alleged unconstitutional conduct (aside from the fact that one suit against Hanshaw alleged excessive force) and the outcome of those lawsuits."). So too here: without more, vague allegations that previous cases are like this case in some unspecified way(s) are simply not enough to show a pattern of unconstitutional conduct that ought to have put Defendants on notice.

*Freeman* is not on point for similar reasons. Once again, the factual allegations of that case—that Spoljaric pepper sprayed Freeman, tased him, punched him, kneed him, and intentionally pushed his head into the doorjamb after Freeman discharged his firearm at the firing range behind his home while Spoljaric was on the property responding to Freeman's call to the police—are unlike the facts alleged here. *Freeman*, 667 F. Supp. 3d at 645–46. And, as it did in *Assi*, the Court found that Freeman's conclusory allegations failed to plausibly allege an illegal policy or custom, as needed to plead a *Monell* claim. *Id.* at 651 ("All of these *Monell* claims fail for the same reason. A *Monell* claimant must demonstrate 'that the municipality had a "policy or custom" that caused the violation of his rights.' … [Freeman] offers only [] bare legal conclusions which the Court properly disregards.").

That leaves only *Templeton*—the case Dillon claims is most like this one. Four problems with relying on that case. First, cursorily alleging that "[t]his case is factually similar to *Thomas J. Templeton v. Tim Brandt* et al. … another matter in which a Lawrence County Sheriff's Deputy arrested a citizen for minor misdemeanor disorderly conduct," (Doc. 1, #9), is unpersuasive. There are many ways for cases to be factually similar—some relevant, others irrelevant—and the Court declines to guess precisely how Plaintiff argues this case is like *Templeton*.

Second, as Plaintiff admits, *Templeton* was resolved by a settlement agreement. (Doc. 8, #58; *see also* Case No. 1:20-cv-34, Doc. 16). So there were no judicial findings of rights violations in that case. And no party has suggested that Defendants, as part of that settlement agreement, admitted to unconstitutional

14

conduct. That makes it difficult for Plaintiff to rely on that settlement agreement to plausibly allege a history of rights violations that would put Defendants on notice of inadequate training.

Third, it is true that this Court determined that Templeton had alleged a policy or custom with sufficient plausibility to survive a motion to dismiss. *Templeton*, 2021 WL 1312617, at *5. But it reached that conclusion because the factual allegations in that case supported a theory that Lawless ratified the specific conduct at issue when one of his deputies called him during the incident. *Id.* at *2 ("Along the way, Brandt called Sheriff Lawless about the events. Brandt relayed to Templeton that the Sheriff was willing to allow Templeton to return home in exchange for Templeton agreeing not to speak to Rodebaugh anymore."), *5 ("[B]ased on the allegations in the Complaint, it is plausible that [Lawless] 'ratified' the conduct at issue in these counts. Thus, at least for present purposes, there is a plausible official-capacity claim based on Lawless's alleged ratification of the allegedly 'illegal' actions."). Plaintiff has made no such allegations here, so *Templeton* does not help Plaintiff plausibly allege ratification.

Last, even if *Templeton* did show a single previous instance of unconstitutional conduct of which the County was, or should have been, aware, one instance does not constitute a history of rights violations that ought to put Defendants on notice that their training was inadequate. *See Assi*, 625 F. Supp. 3d at 750 ("[T]he Sixth Circuit has emphasized that there must have been a sufficient number of prior incidents of a sufficiently similar type of misconduct to demonstrate that a municipal entity was

on notice or constructive notice."). After all, "history" implies repetition, not a one-off instance. So Dillon's official-capacity § 1983 claims cannot survive the Partial Motion to Dismiss based on an inadequate training or supervision theory.

### d.    Inaction

Finally, the Court concludes that Dillon has not plausibly alleged a custom of tolerance or acquiescence to federal rights violations—the "inaction theory" on which she largely rests in her opposition to the Motion to Dismiss. The "inaction theory," under which a policy of tolerating federal rights violations "is unwritten but nevertheless entrenched," has four elements. *Thomas*, 398 F.3d at 429. To prevail on that theory, a plaintiff must show: (1) "a clear and persistent pattern" of rights violations; (2) "notice or constructive notice on the part of the defendant"; (3) "the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction"; and (4) a causal link between the custom and the constitutional deprivation. *Id*. Although the third and fourth elements differ from a failure-to-train claim and the "inaction" theory standard encompasses things other than inadequate training, such as inadequate after-the-fact investigations, the first two elements are substantially the same as the elements of a failure-to-train claim. Plaintiffs bringing either type of claim must show (1) a history of rights violations such that (2)  the defendants were on notice.

Those similarities mean Dillon falls short here for the same reasons discussed in the previous section: she has plausibly alleged neither a clear pattern of rights

violations nor notice. None of the four cases she cites help her clear that hurdle, for the reasons described above. And she offers no additional, non-conclusory factual allegations that serve her any better on this claim, either.

*   *   *

In short, Dillon's case citations do not help her plausibly allege an illegal custom or policy, as *Monell* requires for her official-capacity claims. And the only support for her argument beyond those case citations comes from conclusory allegations that the Court disregards. So she has failed to plausibly allege an essential element of her § 1983 claims, which means those claims fail. *Terry*, 604 F.3d at 275–76 (6th Cir. 2010). Accordingly, the Court dismisses all of Dillon's official-capacity § 1983 claims for failure to state a claim.

## C. The Individual-Capacity Claims Against Lawless

Next, the Court considers the individual-capacity § 1983 claims against Lawless, which she includes as portions of Counts I, IV, V, and VI. Defendants argue that Dillon has also failed to state a claim on which relief can be granted against Lawless in his individual capacity as to any of these claims and that, in the alternative, Lawless is entitled to qualified immunity. (Doc. 6, #37–42). The Court agrees as to the former, and thus does not consider the latter.

"The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020

WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Vicarious liability is not a plausible legal theory under § 1983. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Rather, to successfully sue Lawless as a supervisor, Dillon would need to allege that Lawless "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (cleaned up). And mere knowledge of the offending conduct after the fact is insufficient. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) ("[A] supervisory official's failure to supervise, control, or train the offending individual is not actionable, unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.") (cleaned up).

Dillon fails to clear this hurdle for much the same reason that the official-capacity claims fail. To start, she never alleges that Lawless was directly involved in the incident via either in-person presence or a phone call. So her only possible basis for holding Lawless accountable is some form of supervisory liability. But she does not allege that Lawless specifically encouraged the illegal conduct at issue here. Her only allegations that could be construed as pointing in that direction are her conclusory allegations that "Lawless failed to adequately train and/or supervise Defendant Hamlin." (Doc. 1, #9). As it did above, the Court disregards those conclusory allegations. *Iqbal*, 556 U.S. at 678. So it determines that Dillon has failed to plausibly allege any individual-capacity claims against Lawless. Accordingly, it

also dismisses those portions of Counts I, IV, V, and VI directed at Lawless in his individual capacity.

## D.    The Malicious Prosecution Claim

That leaves Defendants' arguments that Dillon has failed to state a § 1983 malicious prosecution claim. (Doc. 6, #42–43). More specifically, they argue that "there must be evidence that the plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure." (*Id.* at #42). Dillon responds that (1) "[t]he inference (and correct factual scenario in this matter) is that [she] was released from the Lawrence County Jail on a bond as part of a pretrial release program prior to her appearance in the Lawrence County Municipal Court," and (2) "[p]articipation in a pretrial release program constitutes a deprivation of liberty separate from the initial seizure" (Doc. 8, #60 (cleaned up) (citing *Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017))). Defendants respond that the Complaint itself never alleges that Dillon was released on bond, and that the Court should not consider the new factual allegations raised in the Response to the Motion to Dismiss. (Doc. 9, #66). Defendants again prevail on this argument.

The first issue is whether the Court can consider the new factual allegations Dillon includes in her Response. The short answer is that the Court cannot. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("The court may not take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (cleaned up). So Dillon must rely solely on the allegations in the Complaint.

19

The key issue, then, is whether the Complaint itself, standing alone, plausibly alleges a malicious prosecution claim. In answering this question, the Court must first draw all reasonable inferences in favor of Dillon, who is the non-moving party. *Keene Grp.*, 998 F.3d at 310. Then based on that, the Court must assess whether she has alleged sufficient facts to create a reasonable inference that she could show the four elements of a Fourth Amendment malicious prosecution claim: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "a lack of probable cause for the criminal prosecution"; (3) "a deprivation of liberty … apart from the initial seizure"; and (4) that "the criminal proceeding[s] [were] resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (cleaned up). "Such a claim requires that all four elements are met, so if a plaintiff fails to demonstrate even one element, then the claim must fail." *Knight v. Columbus Div. of Police*, No. 2:13-cv-1271, 2014 WL 4557639, at *2 (S.D. Ohio Sept. 12, 2014).

The Complaint alleges that Dillon was unlawfully arrested at the basketball game, and that "[t]he matter proceeded to the Lawrence County Ohio Municipal Court where it was resolved by the prosecutor's entry of a *nolle prosequi*." (Doc. 1, #5). The Court agrees with Defendants that those allegations cannot be fairly read to infer an allegation about participation in a pretrial release program. And even "liberal construction [of pro se pleadings] does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (cleaned up). So Dillion has not plausibly alleged the third element set forth in *Sykes*.

20

Plaintiff resists this conclusion in her opposition brief by arguing that she participated in a pretrial release program and pointing to *Miller*, 866 F.3d at 393, which holds that participation in such a program constitutes a deprivation of liberty separate from her initial arrest. (Doc. 8, #60). But, as noted, any allegations about deprivation of liberty via a pretrial release program needed to be in the Complaint to count, so the Court declines to consider them here. And without them, the Complaint lacks "either direct or inferential allegations respecting all material elements to sustain a recovery" on the malicious prosecution claim. *Terry*, 604 F.3d at 275–76 (6th Cir. 2010) (citation omitted). Accordingly, the Court dismisses the malicious prosecution claim (Count VI) against all Defendants, but does so without prejudice.

## CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Partial Motion to Dismiss (Doc. 6)**.** Accordingly, it **DISMISSES** Counts I, III, IV, and V to the extent those counts include official-capacity claims against Hamlin and Lawless, likewise **DISMISSES** Counts I, IV, and V against Lawless in his individual capacity, and **DISMISSES** the malicious prosecution claim (Count VI), in its entirety. As a result, the Court **DISMISSES** Lawless as a Defendant in this action and **DISMISSES** Count V, which is brought solely against Lawless, in its entirety. Because this is a first dismissal, however, and because it is possible that Dillon could address at least some of the defects noted above, all of the above dismissals are **WITHOUT PREJUDICE**. The Court also **DISMISSES** the Ohio constitutional claim, which cannot be saved by pleading additional factual allegations, **WITH PREJUDICE**. As

21

things stand, this case will proceed solely on the individual-capacity claims against

Hamlin in Counts I, III, and IV.

     **SO ORDERED.**

February 21, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**